**In re TEITELBAUM BAKING CO., Inc.**

No. 27877.

District Court, E. D. New York.

Feb. 17, 1937.

Edward G. Elkins, of Brooklyn, N. Y., for Goldey and Aaron.

Charles A. Morton, of Brooklyn, N. Y., for Louis J. Kolb.

George J. Beldock, of New York City, for auctioneer.

C. A. Venticra, of Brooklyn, N. Y., for Trustee.

BYERS, District Judge.

These are cross motions in respect to the report dated September 8, 1936, of Eugene F. O'Connor, Jr., Special Master; the first is for an order allowing exceptions to the report, and amending the order herein dated January 15, 1936; and the cross motion is for an order disallowing the exceptions, for an order confirming the report and vacating the said order in so far as the provisions thereof relate to or apply to Abraham J. Goldey (Goldie?).

The original order was presented in response to a motion, requiring the said Goldey, the purchaser of a certain oven, the trustee in bankruptcy, and David M. Shapiro as auctioneer, and another whose status is not presently involved, to show cause why an order should not be made, rejecting the bid of Gottfried Baking Company for the said oven and directing Goldey to complete his purchase thereof in accordance with the bid that he made at a judicial sale held December 20, 1935, "and in default thereof, why it should not be adjudged" that Goldey had no further interest in the oven; and that a resale thereof be ordered, and that Goldey and the auctioneer be held jointly and severally liable for all expenditures in connection with said resale, and for the deficiency, if any, arising therefrom; and directing the auctioneer to pay into court the sum of $50.00, being the deposit made by Goldey on the original purchase by him, and for other relief.

The papers on that motion were not served upon Goldey but, on motion of the attorney for the builder of the oven, an order (January 15, 1936) was granted, adjudging that Goldey had failed to complete his purchase in accordance with his bid and that the subsequent resale was for his account; further, that the second sale of the oven for the sum of $500.00 to Gottfried Baking Company be confirmed. The builder's claims against Goldey and the auctioneer were referred to the Special Master, to take testimony and report.

That order was superseded on April 17, 1936, at Goldey's instance, so that the Special Master was directed not to deem the order of January 15th to establish as against Goldey that he did in fact fail to complete the purchase covered by his bid and had no further interest in his bid, or that the subsequent sale was for his ac-

count; that the Special Master take testimony and report whether one Samuel E. Aaron had any interest in the subject-matter of the sale, and whether Louis J. Kolb, the oven-builder, was in a legal position to seek the relief against Goldey which it was the object of his original motion resulting in the order of January 15, 1936, to achieve, and also generally as to the conduct of the auctioneer.

The Special Master took testimony, and it is unnecessary to recapitulate the facts stated in his report touching the happenings at the sale, so far as the same includes the knockdown to Goldey in response to his bid of $1,500.00.

Both the auctioneer and perhaps the Special Master have regarded that transaction as something less than a sale. Goldey minimized it in his testimony by asserting that he did not hear all that the auctioneer said when he announced that the oven was being sold with an "if," namely, that any sale would be subject to confirmation by order of the court. The auctioneer says that *he* did not regard Goldey's bid of $1,500.00 as a sale, although Goldey paid a deposit of $50.00 on account. He is contradicted by Goldey's own testimony, in which he used this language when being asked if he had any conversation with Mr. Morton, the attorney for Kolb, the oven-builder:

"Q. Was it prior to the sale? A. No, that was right after I bought the oven.

"Q. His statement did not influence you to make a bid on it? A. No."

Later in the sale the auctioneer asked Goldey for an additional deposit and the latter inquired when delivery would be made, and the auctioneer replied that he did not know when or if delivery would be made; his reason can best be stated in his own words:

"Q. Why did you do it in this case (erase from his sales slip the name of the purchaser, the amount of the sale and the deposit)? A. Because it was just a notation, and a new one was necessary, in my opinion, and I made a notation that a bid of $1500 was made subject to further disposition. That bid I could not make stand up at that time, so I took a new bid, erased that one and put this one up."

It is impossible to accord any weight to the foregoing, for the reason that, in making the subsequent sale to Gottfried,

the auctioneer had no greater or different authority from that which he possessed in making the sale to Goldey, and there was just as much reason to erase from his records the second sale, as the first.

A word should be said about the auction. It was a judicial sale conducted by the trustee in bankruptcy, and this oven was one of the listed items. The oven was not offered for sale by the trustee, nor had he any part in the events herein discussed.

The amount to be realized on the sale determined whether the builder would have any claim as an unsecured creditor and, if so, how much. Therefore it was proper for the auctioneer to list the item, and to make the sale for the account of the builder, at the time and place of the trustee's sale, but not as a part of it.

The oven was not offered when a bulk bid was sought, because the auctioneer knew and stated publicly that its legal status was not clear, and that any sale of it would be subject to the approval of the court. That statement was made in Goldey's presence and, so far as the court is concerned, his testimony that he did not hear what was said or understand it, is not accepted.

The auctioneer had no greater right to release the purchaser, once he had made a deposit on account of his $1,500.00 bid, in this instance, than he had in any other.

All sales at less than seventy-five per cent. of the appraised value are subject to the approval of the court. Bankr. Act § 70b, 11 U.S.C.A. § 110(b).

The second sale, to the Gottfried Baking Company, was made in the absence of the attorney for the oven-builder and after a lapse of about a half hour. He left the sale understanding that Goldey had become the purchaser at the sum of $1,500.00, and no attempt was made by the auctioneer to secure his consent to releasing Goldey or again offering the oven. Indeed knowledge of what actually took place is not attributable to the attorney for the oven-builder until the lapse of seven or eight days after the sale.

When the original motion was made, it should have been in accordance with the practice prescribed in Re Huguenot Publishing Co., Inc. (C.C.A.) 83 F.(2d) 258, and all that took place subsequent to

the sale to Goldey should have been disregarded. Probably there were practical reasons for not doing this, because Goldey proved to be an elusive person when the effort was made to serve motion papers upon him. If the sale to him were then to be relied upon either for the purpose of insisting upon performance by him or, in the alternative, a resale for his account, with the deficiency, if any, chargeable to him, that was the time and place to assert such a contention.

What was done was to take advantage of the second sale to Gottfried and at the same time try to hold Goldey for the deficiency, and I agree with the Special Master that that cannot be done, for the reason that the motion papers were not served upon Goldey so as to enable him to contest the original motion, or to take such measures as might be calculated to protect his interests on a resale, if one were to be ordered.

So far as the exculpatory paragraphs concerning the auctioneer's conduct are concerned, it is necessary to disagree; whatever may have been the motives of the auctioneer in doing what he did, the fact is that he attempted to release a purchaser, and that he had no authority to do so.

His erasure of the entry of the sale to Goldey, and his return to Goldey of the $50.00 paid on deposit on the purchase made by him, cannot be sanctioned in accord with the views of the Special Master or otherwise. A practice of that kind would be entirely consistent with such cooperation between auctioneers and bidders who attend their sales, as would be calculated to defeat the interests of creditors and the responsibility of the court, and to seriously impair the good faith which is supposed to characterize judicial sales.

From the testimony it appears that Goldey wished to squirm out of his bargain, because he or those associated with him developed a reluctance to perform, and that the auctioneer chose to cooperate to that end.

The following exceptions to the Special Master's report are sustained, in order that an accurate record may be made of this entire transaction, for such future bearing as it may have: First to Seventeenth, inclusive; Twenty-third and Twenty-fourth. As to the matters comprehended in these exceptions, the court is willing to make its own findings based upon the evidence given before the Special Master, if it is desired so to prepare the order to be entered hereon.

If there had been no sale to Gottfried and confirmation thereof, the order of January 15, 1936, would now be supplemented in a manner appropriate to indicate that Goldey's default in completing the sale should be the subject of legal redress in this proceeding, and a resale would be ordered for his account.

As has been stated, this is not possible because the sale to Gottfried, while it took place in Goldey's presence, was not announced by the auctioneer to be for his account, and therefore it cannot be said that he was given an opportunity to protect his interests thereon. Therefore the Special Master's report will be confirmed to this extent: The said resale is not found to have been for the account and risk of Goldey, and no greater relief against Samuel E. Aaron can be had than would have been permissible against Goldey, in this proceeding.

The order of confirmation will be confined to the foregoing.

Settle order.